BENNY NEWSOME, Petitioner-Appellee, v. C. E. (GENE) HUGHES, Sheriff of Vermilion County, *et al.,* Respondents-Appellants.

Fourth District    No. 4—84—0193

Opinion filed March 27, 1985.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and Mark L. Rotert and Terence M. Madsen, Assistant Attorneys General, of Chicago, of counsel), for appellants.

Robert E. McIntire, Assistant Public Defender, of Danville, for appellee.

JUSTICE TRAPP delivered the opinion of the court:

In this appeal, Michael P. Lane, Director of the Illinois Department of Corrections, and C. E. Hughes, sheriff of Vermilion County, challenge a final order granting Benny Newsome's petition for writ of *habeas corpus.* We reverse.

Newsome, while serving a period of mandatory supervised release, was charged with unlawful use of weapons, theft of a firearm, and theft with a prior theft. Based on the same conduct, the Department of Corrections issued a warrant to apprehend Newsome for the purpose of determining whether he had violated the terms of his mandatory supervised release. The theft charges were dismissed. A jury acquitted Newsome of unlawful use of weapons. The following day

Newsome filed a petition for writ of *habeas corpus,* arguing that the acquittal barred the Department from instituting revocation proceedings for the same alleged conduct. The trial court agreed and granted the petition.

Newsome was released from the penitentiary on mandatory supervised release on September 9, 1982. On November 7, 1983, the State's Attorney of Vermilion County filed an information alleging that Newsome had committed unlawful use of weapons, theft of a firearm, and theft with a prior theft. Also on November 7, 1983, the deputy director of the Department of Corrections issued a warrant for Newsome's arrest pursuant to section 3—14—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1003—14—2), alleging that Newsome had violated the rules and conditions of his mandatory supervised release. Newsome was served with written notice of the charges underlying the Director's warrant that same day. The charges included the three criminal violations named in the information and an allegation that Newsome failed to comply with the conditions of his mandatory supervised release by possessing a firearm.

Prior to the trial on the criminal charges, both theft counts were dismissed. A jury trial was conducted on the unlawful-use-of-weapons charge. The State's evidence established that Newsome had been arrested for violating a municipal ordinance which prohibited drinking alcohol on public property. In the course of a pat-down, the arresting officer discovered a loaded gun secreted in Newsome's pants. The discovery of the weapon in Newsome's clothing was corroborated by the testimony of a second police officer at trial. Newsome claimed, however, that the weapon was found in weeds near the point of arrest. The parties stipulated that Newsome had been convicted of a felony in the preceding five years. The jury acquitted Newsome of the sole charge for which he had been tried.

On the day after the trial, Newsome filed a petition for writ of *habeas corpus*. The petition alleged that the Director's warrant was based on the same conduct with which Newsome had been charged and tried. It sought an adjudication of the legality of his confinement. On that date Newsome was admitted to a $10,000 recognizance bond.

In the hearing on the petition, only James Winnett, Newsome's parole agent, gave testimony. Winnett testified that he gave Newsome written notice of the charges relating to the Director's warrant on November 7, 1983. He conceded that the charges were based on the same event which gave rise to the criminal charges. He specified, however, that the unlawful-use-of-weapons offense was different than the charge that Newsome had failed to comply with the conditions of

his parole by possessing a firearm.

The trial judge granted the petition on two theories. First, he found that the warrant was not valid, because it did not cite the underlying charges on the face of the instrument. Second, he concluded that the respondents were estopped from proceeding against Newsome for the same conduct for which he had been tried. The judge found that Newsome was entitled to relief under section 10—124(2) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 10—124(2)), because the acquittal was a "subsequent event" through which Newsome had become entitled to discharge.

Respondents argue on appeal that the writ of *habeas corpus* was improvidently granted by the circuit court because: (1) the writ procedure is not available to a prisoner serving a term of mandatory supervised release; (2) the acquittal of a releasee on a criminal charge does not estop the Department from seeking revocation of mandatory supervised release on the basis of the same conduct; and (3) a Director's warrant issued pursuant to section 3—14—2 of the Unified Code of Corrections does not require citation of the charges on the face of the warrant.

■ We first consider whether the statutory remedy of *habeas corpus* is available to Newsome. It is well established that a writ of *habeas corpus* is available only to obtain the release of a prisoner who has been incarcerated under a judgment of a court which lacked jurisdiction of the subject matter or the person of the petitioner, or where there has been some occurrence subsequent to the prisoner's conviction which entitled him to release. (*Hughes v. Kiley* (1977), 67 Ill. 2d 261, 367 N.E.2d 700; *People ex rel. St. George v. Woods* (1970), 47 Ill. 2d 261, 265 N.E.2d 164.) A petition for writ of *habeas corpus* may not be used to review proceedings which do not exhibit one of these defects, even though the alleged error involves a denial of constitutional rights. See *People v. Reese* (1978), 66 Ill. App. 3d 199, 383 N.E.2d 759; *Long v. Israel* (1977), 56 Ill. App. 3d 14, 371 N.E.2d 873.

The petition filed by Newsome does not allege any error which is subject to review in *habeas corpus* proceedings. He raises no question pertaining to jurisdiction, nor has he alleged any post-conviction event which would entitle him to release. As a prisoner on mandatory supervised release, Newsome remains in the legal custody of the Department of Corrections for the duration of the release period. (Ill. Rev. Stat. 1983, ch. 38, par. 1003—14—2(a).) This being true, Newsome's challenge to the legality of the revocation proceedings might affect the manner in which he would serve his term of mandatory supervised release, but it could not conceivably entitle him to actual re-

lease or discharge. See *People ex rel. Johnson v. Pate* (1970), 47 Ill. 2d 172, 265 N.E.2d 144, *cert. denied* (1971), 402 U.S. 976, 29 L. Ed. 2d 141, 91 S. Ct. 1679.

Section 10—123 of the Code of Civil Procedure provides in part:

"No person shall be discharged under the provisions of this Act, if he or she is in custody:
  ***
2. By virtue of a final judgment of any circuit court, or of any proceeding for enforcement of such judgment, unless the time during which such party may be legally detained has expired." (Ill. Rev. Stat. 1983, ch. 110, par. 10—123(2).)

Since a prisoner on mandatory supervised release remains in the custody of the Department of Corrections, the time during which he can be legally detained does not expire until the term of mandatory supervised release expires; therefore, *habeas corpus* relief is not available to a petitioner, such as Newsome, who is serving a term of mandatory supervised release. Due to the conclusions reached on this issue, it is not necessary to consider the trial court's findings regarding the applicability of collateral estoppel.

■ We next consider the circuit court's finding that the Director's warrant issued for Newsome was defective in that it did not contain a statement of the pending charges. The judge specifically held that due process and statutory law require a statement of the charges on the face of the warrant. We do not agree.

It is clear that the warrant in this case contained no specific statement of charges. The form document merely stated that Newsome had violated the rule or conditions of his mandatory supervised release. It was undisputed, however, that Newsome's parole agent gave Newsome written notice of the charges on the day of his arrest.

It appears plain that the relevant statutory law does not require a statement of the charges to accompany the warrant. Section 3—13—4(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1003—13—4(c)) provides in part:

"An order certified by the Director, Assistant Director Adult Division, or the Supervisor of the Apprehension Unit, or a person duly designated by him or her, with the seal of the Department of Corrections attached and directed to all sheriffs, coroners, police officers, or to any particular persons named in the order shall be sufficient warrant for the officer or the person named therein to arrest and deliver the violator to the proper correctional official. Such order shall be executed the same as criminal processes."

No judicial construction of the statute has imposed any greater requirement regarding the contents of the warrant.

It further appears that due process does not require a Director's warrant to contain a specific statement of the alleged violations. In *Morrissey v. Brewer* (1972), 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593, the Supreme Court undertook to describe what process is due when authorities seek to revoke a prisoner's parole. The court made the following observations regarding the nature of parole and parole revocation:

> "[T]he revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations. *** Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." (408 U.S. 471, 480, 33 L. Ed. 2d 484, 494, 92 S. Ct. 2593, 2600.)

The *Morrissey* opinion analyzed the due process requirements for each stage of parole revocation proceedings, beginning with the parolee's arrest. No special mention was made of any due process requirements relating to the warrant. Contrary to the finding of the circuit court in the present case, the *Morrissey* opinion stated notice of the charges is not due until the parolee is given notice of the preliminary hearing on the matter.

Custody of a prisoner on mandatory supervised release remains with the Department of Corrections throughout the release period. (Ill. Rev. Stat. 1983, ch. 38, par. 1003—14—2(a).) Our supreme court has held that a warrant in the similar circumstances of parole revocation merely "initiate[s] an administrative proceeding to determine whether parole had been violated, and in no way deprive[s] a free citizen of his right to liberty." (*People ex rel. Jefferson v. Brantley* (1969), 44 Ill. 2d 31, 34, 253 N.E.2d 378, 380.) A Director's warrant is not the equivalent of a warrant issued for an arrest on criminal charges.

For the reasons stated herein, we reverse the judgment of the circuit court.

Reversed.

GREEN, P.J., and WEBBER, J., concur.